**17SL-CC02379**

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| **CITY OF RICHMOND HEIGHTS, MISSOURI**, a municipal corporation,    ) <br> ) <br> ) | |
|        **Plaintiff,**    ) <br> ) | **Cause No.** |
| **vs.**       ) <br> ) | **Division No.** |
| **ALLIED WORLD SPECIALTY COMPANY,**   ) <br> ) | **(Jury Trial Demanded)** |

**CITY OF RICHMOND HEIGHTS,**
**MISSOURI**, a municipal corporation,     )
               )
       **Plaintiff,**    )       **Cause No.**
               )
**vs.**          )       **Division No.**
               )
**ALLIED WORLD SPECIALTY**     )   **(Jury Trial Demanded)**
**COMPANY,**           )
Serve at:    c/o Director of Insurance    )
         301 W. High Street, Rm 530  )
         Jefferson City, MO 65101    )
**and**            )
**DARWIN NATIONAL ASSURANCE**  )
**COMPANY,**           )
Serve at:    c/o Director of Insurance   )
         301 W. High Street, Rm 530  )
         Jefferson City, MO 65101    )

       **Defendants.**

## PETITION FOR DAMAGES
## BREACH OF INSURANCE CONTRACT AND VEXATIOUS REFUSAL TO PAY

COMES NOW the Plaintiff, the City of Richmond Heights, Missouri, and for its cause of action against Defendants states as follows:

1.     The City of Richmond Heights, Missouri (hereinafter referred to as the "City") is a home rule municipal corporation located in St. Louis County, Missouri, where the actions referred to herein occurred.

2.     Defendant Allied World Specialty Company is a Delaware insurance company, issuing insurance policies in the State of Missouri.

3.     Darwin National Assurance Company is a Florida insurance company. Collectively, said insurance companies shall be referred to as "Defendants."

1



Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

4.      The City entered into an insurance agreement or contract with Defendants to provide City with Public Officials Liability insurance against loss and which included a duty to defend claims for a Public Officials Wrongful Act, a copy of which insurance agreement is attached hereto as Exhibit 1 and incorporated herein.

5.      Under the terms of the Agreement, Defendant agreed to pay up to Two Million Dollars for a Covered Loss subject to a loss retention of Five Thousand Dollars ($5,000.00) for each claim.

6.      The City first sustained a Covered Loss under the policy during the policy period of July 1, 2013 through July 1, 2014, when a claim was made by Mainline Mortgage Centre, LLC ("Mainline"), alleging a Public Officials Wrongful Act, in that the City was alleged to have breached an implied duty of good faith and fair dealing in failing to sell certain of City's property for a higher price. Mainline sued the Plaintiff over the claim.

7.      Defendants have breached their insurance contract by failing to defend City and the City defended itself against the claim as set forth in the Agreement for the past three years, at a total cost of approximately Two Hundred Thousand Fifty-Thousand Dollars ($250,000.00) for expert witnesses, court costs, depositions and attorneys fees incurred to date, with additional costs expected to be incurred in the future on appeal being prosecuted by Mainline.

8.      The City has fully complied with all of the terms of the aforesaid policy.

9.      The City timely demanded that Defendants defend and indemnify City for the aforesaid loss, but Defendants have refused to do so.

10.     Due to the aforesaid breach of the insurance contract, City has been damaged in the sum of Two Hundred Fifty- Thousand Dollars ($250,000.00), together with interest to the

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

maximum extent permitted by law, and attorney's fees as set forth in the Agreement, and any additional costs of defense.

11. At such times herein mentioned and referred to, the above-noted insurance policy did contain a provision for the payment of expenses incurred by the City as a result of Loss sustained by the City.

12. Due demand had been made on the Defendant by the City in 2013 to defend the claim and pay any loss as covered by the provisions of the policy of insurance.

13. The Defendant has wrongfully and vexatiously refused to defend the City and to pay the costs of defense.

14. This failure and/or refusal to make payment to City, and/or the delay to make payment to City pursuant to the policy provisions of the insurance contract is vexatious in nature to such extent as to justify an award of additional amounts to the City for the delay and refusal, and for the attorney's fees related to this action, pursuant to the provisions of V.A.M.S. § 375.296 and V.A.M.S. § 375.420.

15. The failure of Defendants as insurers to appear and defend any action, suit or other proceeding is deemed prima facie evidence that its failure to make payment was vexatious and without reasonable cause. V.A.M.S. § 375.296.

16. The expected attorney's fees to be incurred by the City to effect recovery in this matter is a reasonable amount in excess of Fifty Thousand Dollars ($50,000.00).

WHEREFORE, Plaintiff City of Richmond Heights prays that this Court: enter judgment against Defendants Allied World Specialty Company and Darwin National Assurance Company for damages in the amount of Two Hundred-Fifty Thousand Dollars ($250,000.00) plus interest thereon at the maximum rate allowed by law, and any additional costs of defense; award City its

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

attorney's fees and costs herein incurred;  and for judgment against the Defendants for damages

for vexatious refusal to pay in an amount that is fair and reasonable; and for interest at the legal

rate from the date of demand for payment, and judgment for an additional sum in the amount of

Thirty Thousand Dollars ($30,000.00) for Defendants' vexatious refusal to make payment or

defend following demand, and prays judgment for the reasonable sum of attorney's fees incurred

herein and prays judgment for the costs expended herein, and prays for such other and further

relief as to the Court may seem just and proper.


CURTIS, HEINZ,
GARRETT AND O'KEEFE, P.C.


Kenneth J. Heinz, #24242
J. Patrick Chassaing, #27246
130 S. Bemiston, Ste. 200
Clayton, MO  63105
(314) 725-8788
(314) 725-8789 Fax
Attorneys for Plaintiff
City of Richmond Heights, Missouri
kheinz@chgolaw.com
pchassaing@chgolaw.com

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

**17SL-CC02379**



### DARWIN NATIONAL ASSURANCE COMPANY
(A member company of Allied World Assurance Company Holdings Ltd.)
1690 New Britain Avenue, Farmington, CT 06032 · Tel. (860) 284-1300 · Fax (860) 284-1301

## PUBLIC OFFICIALS LIABILITY AND
## EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY

POLICY NUMBER: 0202-2978          RENEWAL OF: 0202-2978

### NOTICES

SUBJECT TO ITS TERMS, THIS POLICY PROVIDES COVERAGE FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD. DEFENSE EXPENSES ARE PAID IN ADDITION TO THE LIMITS OF LIABILITY; EXCEPT THAT FOR SPECIFIC CLAIMS UNDER INSURING AGREEMENT I.A.(2), THE APPLICABLE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES.

*PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE BROKER.*

## DECLARATIONS

ITEM 1.   NAMED INSURED:

City of Richmond Heights

**ADDRESS:**
1330 South Big Bend Boulevard
Richmond Heights, MO 63117

ITEM 2.   POLICY PERIOD:          Inception Date: 07/01/2013          Expiration Date: 07/01/2014
                                  (12:01 a.m. Standard Time at the address stated in Item 1)

ITEM 3.   LIMITS OF LIABILITY

(A)   **PUBLIC OFFICIALS LIABILITY**
       $2,000,000   Insurer's maximum Limit of Liability for all Loss from each Claim
                    under INSURING AGREEMENT I.A(1);

(B)   **NON-MONETARY COVERAGE – DEFENSE ONLY**
       (1) $250,000   Insurer's maximum Limit of Liability for all   Defense Expenses
                      from each Claim under INSURING AGREEMENT I.A(2);

       (2) $250,000   Insurer's maximum Limit of Liability for all   Defense Expenses
                      from all Claims under INSURING AGREEMENT I.A(2);

Exhibit 1

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

**(C)   EMPLOYMENT PRACTICES LIABILITY AND THIRD PARTY LIABILITY**
$2,000,000   Insurer's maximum Limit of Liability for all Loss from each Claim under INSURING AGREEMENT I.B.

**(D)   POLICY AGGREGATE LIMIT OF LIABILITY**
$2,000,000   Insurer's aggregate Limit of Liability for all Loss from all Claims under INSURING AGREEMENTS I.A(1) and INSURING AGREEMENT I.B. and for all Defense Expenses from all Claims under INSURING AGREEMENT I.A(2).

**(E)   PUBLIC OFFICIALS CRISIS MANAGEMENT LIMIT OF INSURANCE**
$250,000   Insurer's maximum Limit of Insurance for all Crisis Management Expenses from all Public Crisis Events under Section I.C(2)

**ITEM 4.   RETENTIONS:**

(a) $5,000   each and every Claim under INSURING AGREEMENT I.A(1)

(b) $5,000   each and every Claim under INSURING AGREEMENT I.A(2)

(c) $20,000   each and every Claim under INSURING AGREEMENT I.B.

(d) $5,000   each and every Public Crisis Event under Section I.C(2)

**ITEM 5.   NOTICES REQUIRED TO BE GIVEN TO THE INSURER MUST BE ADDRESSED TO:**

Notice of Claims and Circumstances:      NoticeofLoss@AWAC.com or
ATTN Claims Department
1690 New Britain Avenue
Farmington, CT 06032

All Other Notices:      1690 New Britain Avenue
Farmington, CT 06032

**ITEM 6.   POLICY PREMIUM:**      $23,665.00

**Total Policy Premium:**      $23,665.00

**ITEM 7.   RETROACTIVE DATE:** None - Full Prior Acts

**ITEM 8.   ENDORSEMENTS ATTACHED AT ISSUANCE:**
See Schedule of Forms and Endorsements

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

THESE DECLARATIONS, THE POLICY FORM, ANY ENDORSEMENTS AND THE APPLICATION CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE INSURER AND THE INSURED RELATING TO THIS INSURANCE.

**In Witness Whereof, the Insurer has caused this Policy to be executed by its authorized officers.**

_____
Authorized Representative

06/12/2013
Date

DRWN POL 1005 (1/2012)          Page 3 of 3

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM



## ACKNOWLEDGMENT AND AGREEMENT

McMahon Berger (the "Firm") has been pre-approved by Allied World National Assurance Company and/or its affiliates including Darwin National Assurance Company and Darwin Select Insurance Company ("Allied World") as defense counsel to the Members of the Saint Louis Area Insurance Trust for the defense of its non-mass/class, employment practices and governmental claims in Missouri under Policy #(see attached list).   Allied World's Billing and Reporting Guidelines for Defense Counsel (the "Guidelines") have been provided to the Firm and are incorporated herein by reference.   The Firm hereby agrees that it will adhere to Allied World's Guidelines (check ONE of the two options below):

☒     As stated

☐     With the following modifications as agreed upon by an authorized Allied World representative:

Approved by: _____ _____ Kevin Fisher_____
(printed name and signature of Allied World representative)

The Firm recognizes that this pre-approval shall in no way obligate Allied World to utilize the Firm's services with respect to any claim for any insured, and under any policy, other than that indicated above, and that Allied World always reserves the right to assign alternate defense counsel of its choosing notwithstanding the existence of a pre-approved counsel arrangement.

The Firm also confirms that it will apply the following hourly rates and issue invoices according to the specified schedule with respect to work assigned under this agreement:

| Hourly Rates | | Billing Schedule |
|---|---|---|
| Partners: | no more than $235/hour | ☒ Quarterly (except immediate if billing in any quarterly cycle exceeds $25,000) |
| Associates: | no more than $190/hour | |
| Paralegals: | no more than $100/hour | |
| Tax ID: | 43-1118369 | ☐ Other:_____ |

The undersigned hereby binds the Firm to the terms of this agreement and attests to having the authority to do so.

Name (print):   James N. Foster, Jr._____
Signature: _____
E-mail:   foster@mcmahonberger.com
Date:   October 20, 2011_____

On behalf of (name and address of firm):   McMahon Berger, P.C._____
     2730 N. Ballas Rd., Suite 200____
     St. Louis, MO 63131_____

Note: Please send a signed original copy of this page to the appropriate Allied World representative. In the event that Allied World has agreed to any modifications to these guidelines, such modifications will be noted above and Allied World will return a signed original copy of this page to the firm as verification of its acceptance of same. Modifications made without Allied World's written consent will not be honored.

Electronically Filed - St. Louis County - June 30, 2017 - 02:39 PM



## ACKNOWLEDGMENT AND AGREEMENT

Hinshaw & Culbertson LLP (the "Firm") has been pre-approved by Allied World National Assurance Company and/or its affiliates including Darwin National Assurance Company and Darwin Select Insurance Company ("Allied World") as defense counsel to the Members of the Saint Louis Area Insurance Trust for the defense of its non-mass/class, employment practices and governmental claims in Missouri under Policy #(see attached list).   Allied World's Billing and Reporting Guidelines for Defense Counsel (the "Guidelines") have been provided to the Firm and are incorporated herein by reference.  The Firm hereby agrees that it will adhere to Allied World's Guidelines (check ONE of the two options below):

☒   As stated

☐   With the following modifications as agreed upon by an authorized Allied World representative:

Approved by: _____   Kevin Fisher_____
(printed name and signature of Allied World representative)

The Firm recognizes that this pre-approval shall in no way obligate Allied World to utilize the Firm's services with respect to any claim for any insured, and under any policy, other than that indicated above, and that Allied World always reserves the right to assign alternate defense counsel of its choosing notwithstanding the existence of a pre-approved counsel arrangement.

The Firm also confirms that it will apply the following hourly rates and issue invoices according to the specified schedule with respect to work assigned under this agreement:

**Hourly Rates**
Partners:  no more than $235/hour
Associates:  no more than $190/hour
Paralegals:  no more than $95/hour
Tax ID: _____

**Billing Schedule**
☒ Quarterly (except immediate if billing in any quarterly cycle exceeds $25,000)
☐ Other:_____

The undersigned hereby binds the Firm to the terms of this agreement and attests to having the authority to do so.

Name (print): Terese A. Drew
Signature: _____
E-mail: tdrew@hinshawlaw.com
Date: 10/19/2011
On behalf of (name and address of firm): Hinshaw & Culbertson LLP
701 Market St., Ste 1300
St Louis MO 63101

---

Note: Please send a signed original copy of this page to the appropriate Allied World representative. In the event that Allied World has agreed to any modifications to these guidelines, such modifications will be noted above and Allied World will return a signed original copy of this page to the firm as verification of its acceptance of same. Modifications made without Allied World's written consent will not be honored.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM



## ACKNOWLEDGMENT AND AGREEMENT

Pitzer & Snodgrass, P.C. (the "Firm") has been pre-approved by Allied World National Assurance Company and/or its affiliates including Darwin National Assurance Company and Darwin Select Insurance Company ("Allied World") as defense counsel to the Members of the Saint Louis Area Insurance Trust for the defense of its non-mass/class, employment practices and governmental claims in Missouri under Policy #(see attached list).   Allied World's Billing and Reporting Guidelines for Defense Counsel (the "Guidelines") have been provided to the Firm and are incorporated herein by reference.  The Firm hereby agrees that it will adhere to Allied World's Guidelines (check ONE of the two options below):

☒ As stated

☐ With the following modifications as agreed upon by an authorized Allied World representative:

Approved by: _____ Kevin Fisher_____
(printed name and signature of Allied World representative)

The Firm recognizes that this pre-approval shall in no way obligate Allied World to utilize the Firm's services with respect to any claim for any insured, and under any policy, other than that indicated above, and that Allied World always reserves the right to assign alternate defense counsel of its choosing notwithstanding the existence of a pre-approved counsel arrangement.

The Firm also confirms that it will apply the following hourly rates and issue invoices according to the specified schedule with respect to work assigned under this agreement:

Hourly Rates
Partners:      no more than $165/hour
Associates:   no more than $130/hour
Paralegals:   no more than $95/hour
Tax ID: _43-1573270_

Billing Schedule
☒ Quarterly (except immediate if billing in any quarterly cycle exceeds $25,000)

☐ Other:_____

The undersigned hereby binds the Firm to the terms of this agreement and attests to having the authority to do so.

Name (print): _Peter J. Dunne_
Signature: _Peter J Dunne_
E-mail: _dunne@pspclaw.com_
Date: _10/20/11_
On behalf of (name and address of firm): _Pitzer Snodgrass P.C._
_100 S. 4th St. #400_
_St. Louis Mo 63102_
_314-421-5545_

Note: Please send a signed original copy of this page to the appropriate Allied World representative. In the event that Allied World has agreed to any modifications to these guidelines, such modifications will be noted above and Allied World will return a signed original copy of this page to the firm as verification of its acceptance of same. Modifications made without Allied World's written consent will not be honored.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM





## ACKNOWLEDGMENT AND AGREEMENT

Brinker & Doyen, L.L.P. (the "Firm") has been pre-approved by Allied World National Assurance Company and/or its affiliates including Darwin National Assurance Company and Darwin Select Insurance Company ("Allied World") as defense counsel to the Members of the Saint Louis Area Insurance Trust for the defense of its non-mass/class, employment practices and governmental claims in Missouri under Policy #(see attached list).   Allied World's Billing and Reporting Guidelines for Defense Counsel (the "Guidelines") have been provided to the Firm and are incorporated herein by reference.  The Firm hereby agrees that it will adhere to Allied World's Guidelines (check ONE of the two options below):

☒    As stated

☐    With the following modifications as agreed upon by an authorized Allied World representative:

Approved by: _____   Kevin Fisher_____
(printed name and signature of Allied World representative)

The Firm recognizes that this pre-approval shall in no way obligate Allied World to utilize the Firm's services with respect to any claim for any insured, and under any policy, other than that indicated above, and that Allied World always reserves the right to assign alternate defense counsel of its choosing notwithstanding the existence of a pre-approved counsel arrangement.

The Firm also confirms that it will apply the following hourly rates and issue invoices according to the specified schedule with respect to work assigned under this agreement:

| Hourly Rates | | Billing Schedule |
|---|---|---|
| Partners: | no more than $185/hour | ☒ Quarterly (except immediate if billing in any quarterly cycle |
| Associates: | no more than $150/hour | exceeds $25,000) |
| Paralegals: | no more than $110/hour | |
| Tax ID: | 43-1778860 | ☐ Other:_____ |

The undersigned hereby binds the Firm to the terms of this agreement and attests to having the authority to do so.

Name (print): Jeffrey J. Brinker/
Signature: _____
E-mail: jbrinker@brinkerdoyen.com
Date: 6/26/12

On behalf of (name and address of firm):    Brinker & Doyen, L.L.P.
                                             34 N. Meramec Ave., 5th Floor
                                             Clayton, MO  63105

> Note: Please send a signed original copy of this page to the appropriate Allied World representative. In the event that Allied World has agreed to any modifications to these guidelines, such modifications will be noted above and Allied World will return a signed original copy of this page to the firm as verification of its acceptance of same. Modifications made without Allied World's written consent will not be honored.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

# SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this policy at time of issue.

| Form Number | Edition Date | Description |
|---|---|---|
| DRWN POL 1005 | 2012-01-01 | Public Officials and Employment Practices Liability Policy Declarations |
| SAA-100 | 1998-08-01 | Schedule of Policy Forms and Endt's. |
| DRWN POL 1000 | 2012-01-01 | Public Officials and Employment Practices Liability Insurance Policy |
| PGU 1052 MO | 2012-06-01 | Minimum Earned Premium |
| e1159 | 2012-06-01 | Missouri Amendatory Endorsement |
| PGU 1072 | 2012-01-01 | Defense Coverage for Tax-Exempt Bond Claims |
| PGU SLAIT MANU | 2011-07-01 | Amend Extended Reporting Period |
| POL ENDT | 2011-10-01 | Defense Reimbursement Coverge for Contract Claims Subject to Sublimit |
| PGU 1064 | 2012-01-01 | Amend Notice of Claim - Notice to Specific Individuals |

SAA-100 (8-98)

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM



## PUBLIC OFFICIALS LIABILITY AND EMPLOYMENT PRACTICES LIABILITY INSURANCE POLICY

**SUBJECT TO ITS TERMS, THIS POLICY PROVIDES COVERAGE FOR CLAIMS FIRST MADE DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD. DEFENSE EXPENSES ARE PAID IN ADDITION TO THE LIMITS OF LIABILITY;   EXCEPT THAT FOR SPECIFIC CLAIMS UNDER INSURING AGREEMENT I.A(2), THE APPLICABLE LIMITS OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY THE PAYMENT OF DEFENSE EXPENSES. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the **Insurer**, including the statements made in the **Application**, the **Insurer** and the **Insureds**, subject to all of the terms, conditions and limitations of this Policy and any endorsements thereto, agree as follows:

I.      **INSURING AGREEMENTS; ADDITIONAL COVERAGES**

     A.      Public Officials Liability

        (1)      Public Officials Wrongful Acts Coverage

The **Insurer** will pay on behalf of any **Insured**, excess of the Retention and subject to the Limits of Liability set forth in the Declarations, **Loss** which the **Insured** is legally obligated to pay as a result of a **Claim** first made against an **Insured** during the **Policy Period** or any applicable Extended Reporting Period, for a **Public Officials Wrongful Act** which occurs on or after the **Retroactive Date** and before the end of the **Policy Period**.

The **Insurer** will have the right and duty to defend a **Claim** against an **Insured** for a **Public Officials Wrongful Act** which is covered under this INSURING AGREEMENT A(1), even if the allegations of such **Claim** are groundless, false or fraudulent.

        (2)      Claims Seeking Non-Monetary Relief, Defense Only Coverage

The **Insurer** will reimburse the **Insured**, excess of the Retention and subject to the Limits of Liability set forth in the Declarations, **Defense Expenses** incurred in connection with a **Claim** exclusively seeking, and at all times remaining a **Claim** exclusively seeking, **Non-Monetary Relief**, which is first made against any **Insured** during the **Policy Period** or any applicable Extended Reporting Period, and arising out of **Public Officials Wrongful Acts** which occurs on or after the **Retroactive Date** and before the end of the **Policy Period**.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

It shall be the duty of the **Insured**, and not the **Insurer**, to investigate and defend any **Claim** under this INSURING AGREEMENT A(2).

B.    Employment Practices Liability and Third Party Liability Coverage

The **Insurer** will pay on behalf of any **Insured**, in excess of the Retention and subject to the Limits of Liability set forth in the Declarations, **Loss** which the **Insured** is legally obligated to pay as a result of a **Claim** first made against an **Insured** during the **Policy Period** or any applicable Extended Reporting Period, for an **Employment Practices Wrongful Act** or **Third Party Wrongful Act** which occurs on or after the **Retroactive Date** and before the end of the **Policy Period**.

The **Insurer** will have the right and duty to defend a **Claim** first made against an **Insured** for **Employment Practices Wrongful Act** or **Third Party Wrongful Act** which is covered under this INSURING AGREEMENT B., even if the allegations of such **Claim** are groundless, false or fraudulent.

C.    ADDITIONAL COVERAGES

(1)    Loss of Earnings Coverage

The **Insurer** will pay on behalf of any **Insured**, in addition to the Limits of Liability set forth in the Declarations, all reasonable expenses incurred by the **Insured** at the **Insurer's** request to assist the **Insurer** in the investigation or defense of any **Claim**, including actual loss of earnings of any **Insured**, because of time off from work; provided that the most the **Insurer** shall pay shall be up to $500 per day, per **Insured**. Such "expenses," as used herein, shall not include salaries paid to employees of the **Named Insured** in the normal course of business.

(2)    Public Officials Crisis Management Coverage

The **Insurer** will pay on behalf of the **Named Insured**, in excess of the Retention and subject to the Limit of Liability set forth in the Declarations, those **Crisis Management Expenses** incurred in response to any **Public Crisis Event** first taking place during the **Policy Period** and reported to the **Insurer** in accordance with Section IV.G. of this Policy.

## II.   DEFINITIONS

A.    "**Application**" means all applications, including any attachments and other materials provided therewith or incorporated therein, submitted in connection with the underwriting of this Policy or for any other policy of which this Policy is a renewal, replacement or which it succeeds in time.

B.    "**Bodily Injury**" means physical injury, sickness or disability of a person, including mental incapacity or death resulting from any of these at any time.

C.    "**Business Invitee**" means a natural person, solely in their capacity as one who is invited to enter into and remain on any **Premises** for a purpose directly or

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

indirectly connected with the business or commercial dealings of the **Named Insured** therein.   A "**Business Invitee**" shall not, under any circumstances, include a trespasser or any other person who enters any **Premises** without the **Named Insured's** knowledge or permission, or any **Employee**, or any student or minor.

D.    "**Claim**" means:

    (1)    any written demand for monetary damages or **Non-Monetary Relief**;

    (2)    any written request to toll or waive any statute of limitations, or to waive any contractual time bar, relating to a potential suit against an **Insured** for a **Wrongful Act**;

    (3)    any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding;

    (4)    any criminal proceeding which is commenced by the return of an indictment or similar document;

    (5)    any administrative or regulatory proceeding or investigation, including a proceeding brought by or before the Equal Employment Opportunity Commission or similar state or local agency, commenced by the filing of a notice of charges, formal order of investigation or similar document; or

    (6)    any arbitration proceeding, or any other alternative dispute resolution proceeding,  to which the **Insured** must submit or does submit with the **Insurer's** consent.

**Claim** shall not include any labor grievance, arbitration or other proceeding brought pursuant to a collective bargaining agreement.

A **Claim** will be deemed to have been first made when an **Insured** receives notice of the **Claim**.

E.    "**Crisis Management Expenses**" means **Public Relations Expenses**, **Travel/Printing Expenses**, **Family Travel Expenses** and **Post-Crisis Expenses**; provided however, that **Crisis Management Expenses** shall not include:

    (1)    the **Named Insured's** overhead expenses or any salaries, wages, fees or benefits of **Employees**;

    (2)    the cost of medical, psychiatric or counseling services, even if provided by a **Crisis Management Firm**; or

    (3)    any fees or expenses, legal or otherwise, related to civil, administrative or criminal investigations, proceedings or litigation.

F.    "**Crisis Management Firm**" means any public relations firm, crisis management firm or law firm hired or appointed by the **Named Insured** to perform **Crisis Management Services** in connection with **Public Crisis Events**.  It shall be the duty of the **Insured** to select and retain the **Crisis Management Firm**.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

G.   "**Defense Expenses**" means:

   (1)   reasonable and necessary fees, costs, charges or expenses resulting from the investigation, defense or appeal of a **Claim**;

   (2)   premium for an appeal, attachment or similar bond, but without any obligation to apply for and obtain such bond, in connection with a **Claim**;

   (3)   any fees, costs, charges or expenses incurred by the **Insured** at the specific written request of the **Insurer** to assist the **Insurer** in the investigation, defense or appeal of a **Claim**.

"**Defense Expenses**" does not include: (a) amounts incurred by the **Insured** prior to the date a **Claim** is first made and reported to the **Insurer**; or (b) compensation or benefits of any **Insured Person** or any overhead expenses of the **Insured**.

H.   "**Emergency Response Plan**" means:

   (1)   a formal written and adopted public safety and crisis response manual that details the **Named Insured's** policies and procedures in the event of an **Public Crisis Event**; or

   (2)   in the absence of such formal written manual, any applicable federal, state or local law, ordinance or statute that authorizes the **Named Insured** to take emergency action or specifically describes the obligations of the **Named Insured** in the event of a public emergency.

I.   "**Employee**" means the following natural persons, but only for **Wrongful Acts** committed while acting within the scope of employment for the **Named Insured**:

   (1)   full-time, part-time, seasonal and temporary employees; and

   (2)   all persons who perform services on a volunteer basis for the **Named Insured**, and under the direction and control of the **Named Insured**.

**Employee** shall not include persons providing services to the **Named Insured** under a mutual aid agreement or any similar agreement.

J.   "**Employment Practices Wrongful Act**" means any of the following, when alleged by any past or present **Employee** of the **Named Insured** or any applicant for employment with the **Named Insured**, in connection with that person's actual or proposed employment relationship with the **Named Insured**:

   (1)   wrongful dismissal, discharge or termination of employment, whether actual or constructive;

   (2)   harassment (including sexual harassment whether "quid pro quo," hostile work environment or otherwise);

   (3)   discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability or any basis prohibited by federal, state or local laws;

   (4)   breach of any manual of employment policies or procedures issued to the **Insureds** by the **Named Insured**;

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

  (5)  retaliatory action in response to that **Employee's**:

    (a) disclosure or threat of disclosure of any act by an **Insured** alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

    (b) actual or attempted exercise of any right that **Employee** has under law;

    (c) filing of any **Claim** under the Federal False Claims Act or any other federal, state, local or foreign "whistleblower" law;

  (6)  misrepresentation, libel, slander, humiliation, defamation, invasion of privacy, infliction of emotional distress or mental anguish;

  (7)  wrongful failure to employ or promote, wrongful deprivation of career opportunity, including tenure, wrongful demotion or evaluation or wrongful discipline; or

  (8)  breach of a contract to commence or to continue employment with the **Named Insured**.

An **Employment Practices Wrongful Act** shall not include a **Public Officials Wrongful Act**.

K.  "**Family Travel Expenses**" means the reasonable and necessary expenses incurred by any natural or adoptive parent, legal guardian, spouse, or child of a **Victim** within thirty (30) days after such **Public Crisis Event** took place to travel to the location where the **Public Crisis Event** took place, so long as the **Public Crisis Event** took place on an official trip sponsored by the **Named Insured**. For the purpose of this definition, coach air transportation and/or ground transportation and standard class hotel accommodations shall be deemed reasonable expenses.

L.  "**Insured**" means:

  (1)  the **Named Insured**;

  (2)  all past, present or future duly elected, appointed or employed officials, directors, or members of commissions, boards or other units operated by the **Named Insured** and under its jurisdiction, within the apportionment of the **Named Insured's** operating budget in the **Application**;

     provided that "**Insured**" shall not include the following boards, commissions or units, or any officials, directors, members or employees thereof: schools, airports, transit authorities, hospitals, nursing homes, housing authorities, port authorities or any type of utility companies, unless otherwise provided in an Endorsement attached hereto;

  (3)  **Employees**; and

  (4)  all persons providing services to the **Named Insured** under a mutual aid or any similar agreement which is disclosed on the **Application**, but solely while acting in this capacity; however, such persons are not **Insureds** with respect to **Claims** for **Employment Practices Wrongful Acts** or **Third Party Wrongful Acts**.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

"**Insured**" shall also include a lawful spouse or domestic partner of any individual identified the paragraphs above, but only with respect to liability arising out of **Wrongful Acts** committed by such individual, and provided that such spouse or domestic partner is represented by the same counsel as such individual with respect to any **Claim**.

In the event of the death, incapacity or bankruptcy of an **Insured** individual, any **Claim** against the estate, heirs, legal representatives or assigns of such **Insured** individual for a **Wrongful Act** will be deemed a **Claim** against such **Insured** individual.

M.     "**Insurer**" means the Company identified in the Declarations.

N.     "**Loss**" means damages, pre-judgment interest, post-judgment interest, front pay and back pay, judgments, settlements, punitive or exemplary damages where insurable under applicable law, or other amounts that an **Insured** is legally obligated to pay as a result of a **Claim**.

**Loss** will not include:

(1)     **Defense Expenses**;
(2)     **Non-Monetary Relief**;
(3)     any amount representing the value of diminished or lost retirement, health care or other benefits;
(4)     fines, taxes, penalties;
(5)     the cost of disaster response activities conducted by the **Insured** as required by the Federal Emergency Management Agency (FEMA);
(6)     amounts due under any contract to commence, continue or separate from employment  with the **Named Insured**, including but not limited to the value of any compensation or employment benefits lost, or the cost of specific performance in connection with any such contract; or
(7)     the multiplied portion of a multiple damages award; provided that **Loss** will include any multiplied damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act ("Specified Multiplied Damages") that an **Insured** is obligated to pay as a result of a **Claim**, but only if such Specified Multiplied Damages are insurable under applicable law.

For the purpose of determining the insurability of punitive damages, exemplary damages or Specified Multiplied Damages under this Policy, the laws of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction:

(a)     is the location of the court which awarded or imposed such punitive or exemplary damages or Specified Multiplied Damages;
(b)     is where the **Named Insured** is incorporated or otherwise organized or has a place of business; or
(c)     is where the **Insurer** is incorporated or has its principal place of business.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

O.   "**Named Insured**" means the public entity set forth in ITEM 1. of the Declarations.

P.   "**Non-Monetary Relief**" means relief or redress in any form other than compensatory or monetary damages, including: the costs of complying with any injunctive, declaratory or equitable relief, remedy or order; the costs of compliance with the Americans with Disabilities Act or any similar provisions of federal, state or local statutory or common law; and any award of claimant's or plaintiff's attorneys fees or costs, whether or not provided for by statute, but only with respect to **Claims** seeking such non-monetary relief. **Non-Monetary Relief** shall not include the cost of disaster response activities conducted by the **Insured** as required by the Federal Emergency Management Agency (FEMA).

Q.   "**Personal Injury**" means the following, when alleged against an **Insured** by an entity or a person who is not a past or present **Insured**, or applicant for employment with the **Insured**:  libel, slander, or other defamation; invasion of privacy, false arrest, erroneous service of process, wrongful detention or imprisonment, malicious prosecution, wrongful entry or eviction, subject to Exclusion C(11), infringement of copyright or trademark, or other unauthorized use of title, or plagiarism or misappropriation of ideas.

R.   "**Policy Period**" means the period from the Inception Date of this Policy set forth, in ITEM 2 of the Declarations, to the Expiration Date of this Policy set forth in ITEM 2 of the Declarations, or to any earlier cancellation date of this Policy.

S.   "**Pollutant**" means any of the following:

   (1)   smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including medical or pharmaceutical supplies and materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, pollutants or contaminants;

   (2)   mold(s), mildew(s), fungi and/or spore(s); or any materials, goods or products containing, harboring or nurturing any such mold(s), mildew(s), fungi and/or spore(s);

   (3)   lead, silica or asbestos, whether or not airborne as a particle, contained in or formed as part of a product, structure or other real or personal property, ingested or inhaled or transmitted in any fashion, or found in any form whatsoever; or

   (4)   nuclear reaction, radioactive contamination or any radiation of any kind, including but not limited to nuclear radiation and electromagnetic radiation.

T.   "**Post-Crisis Expenses**" means the reasonable costs incurred by the **Named Insured** within sixty (60) days after the **Public Crisis Event** took place to purchase equipment or make property improvements that are not covered by other insurance and that relate directly to the security of the **Named Insured's Premises** and may assist in prevention or mitigation of future **Public Crisis Events**.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

U.   "**Premises**" means the following, if located in the continental United States:

(1)   any building, facility or other real property including adjoining ways, which the **Named Insured** owns, rents or leases and is used by the **Named Insured** to conduct its business, including administration, maintenance and recreational facilities;

(2)   any other building, facility, or other real property, but solely if being visited by the **Named Insured's** elected or appointed or employed officials, directors, members of commissions, boards or other units operated by the **Named Insured** and under its jurisdiction, or **Employees**, on an official business trip on behalf of by the **Named Insured**;

(3)   any vehicle that the **Named Insured** owns or leases pursuant to a written contract, but solely if being used in the transportation of the **Named Insured's** elected or appointed or employed officials, directors, members of commissions, boards or other units operated by the **Named Insured** and under its jurisdiction, or **Employees**;

"**Premises**" does not include: (i) any building, facility, or other real property owned, rented or leased by, or under the management and direction of any individual or entity other than the **Named Insured**, other than as described in paragraph (2) above; (ii) any location for an event independently organized by **Employees** or others without the knowledge or approval of the **Named Insured**; or (iii) any vehicle, other than as describe in paragraph (3) above.

V.   "**Public Crisis Event**" means:

(1)   any violent act of a criminal nature taking place on the **Named Insured's Premises** which causes **Bodily Injury** to a **Victim**; or

(2)   a credible threat communicated to the **Named Insured** of a violent act of a criminal nature taking place on the **Named Insured's Premises** which the **Named Insured** reasonably believes may imminently cause **Bodily Injury** to a **Victim**;

in response to which the **Named Insured**:
(i)     implements its **Emergency Response Plan**;
(ii)    contacts federal, state or local police authorities for assistance; and
(iii)   invokes an emergency succession plan due to **Bodily Injury** to a **Victim**, or the credible threat thereof.

**Public Crisis Events** involving a sequence or series of related violent acts or threats will be deemed to have taken place at the time the first violent act began or threat occurred. Continuous or repeated exposure to substantially the same acts or threats, regardless of how many **Victims** by the same perpetrator, or two or more perpetrators acting in concert, shall be considered one **Public Crisis Event**.

W.   "**Public Officials Wrongful Act**" means:

(1)   any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty, including any **Personal Injury**, by any **Insured**;

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

(2)     any actual or alleged violation of civil rights protected under 42 USC 1981 et seq., or any similar federal, state or local law, by any **Insured**;

(3)     any matter claimed against an **Insured** solely by reason of his or her status as an **Insured** during the **Policy Period**;

if committed in the performance of his or her duties for the **Named Insured**; or

(4)     any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty by a natural person **Insured** while serving, at the direction or request of the **Named Insured**, in his or her capacity as a board member or committee member of a not-for-profit organization, other than the **Named Insured**, which is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code, as the same may be amended from time to time, at the direction or request of the **Named Insured**. The coverage provided by this Subsection W(4) is excess of, and shall not contribute with, any other insurance plan or program of self-insurance carried by such not-for-profit corporation, and any contribution or indemnification to which a natural person **Insured** is entitled to from such not-for-profit organization.

A **Public Officials Wrongful Act** shall not include an **Employment Practices Wrongful Act** or a **Third Party Wrongful Act**.

X.      "**Public Relations Expenses**" means the reasonable and necessary fees and expenses incurred by the **Named Insured** in response to a **Public Crisis Event**,within 120 days after such **Public Crisis Event** took place, for services performed by a **Crisis Management Firm** to minimize potential harm to the name or reputation of the **Named Insured** arising from such **Public Crisis Event**, including but not limited to maintaining and restoring public confidence in the **Named Insured** and providing advice to the **Insureds**.

Y.      "**Related Claims**" means all **Claims** for **Wrongful Acts** based upon, arising out of, resulting from, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances situations, transactions or events, whether related logically, causally or in any other way.

Z.      "**Retroactive Date**" means the applicable date set forth in ITEM 7. of the Declarations.

AA.     "**Sexual Abuse and Molestation**" means any actual or alleged conduct, physical act, gesture or spoken or written word of a sexual nature directed by an **Insured**, or by any person for whom an **Insured** is legally responsible, toward any person under the care, custody or control of any **Insured**, including without limitation any actual, alleged or threatened sexual intimacy (even if allegedly consensual), sexual molestation, sexual assault or battery, exploitation or any other sexual act.

BB.     "**Terrorism**" means "Certified Acts" as defined by the Terrorism Risk Insurance Act of 2002 (TRIA) and as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007. Pursuant to such Acts as currently written, a

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

"Certified Act" is any act that is certified by the Secretary of the Treasury of the United States of America: to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the U.S. (or outside of the U.S in the case of certain air carriers, vessels, and U.S. missions); and to have been committed by an individual or individuals acting as part of an effort to coerce the civilian population of the U.S. or to influence the policy or affect the conduct of the U. S. Government by coercion.

CC.     "**Third Party Wrongful Act**" means any of the following, when alleged against an **Insured** by either a **Business Invitee** of the **Named Insured** or by a third party individual (other than another **Insured**, or a student or minor) with whom an **Insured** interacts outside of the **Premises** for the purpose of conducting official business on behalf of the **Named Insured**:
(1)     harassment (including sexual harassment);
(2)     discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy or disability or any basis prohibited by federal, state or local laws; or
(3)     invasion of privacy.

A **Third Party Wrongful Act** shall not include a **Public Officials Wrongful Act**.

DD.     "**Travel/Printing Expenses**" means the reasonable and necessary expenses incurred by the **Named Insured** in response to a **Public Crisis Event** within 120 days after such **Public Crisis Event** took place for printing, advertising, mailing materials, or travel by any **Insured** or the **Crisis Management Firm** in connection with such **Public Crisis Event**.

EE.     "**Victim**" means:

(1)     any elected or appointed or employed officials, directors, members of commissions, boards or other units operated by the **Named Insured** and under its jurisdiction;
(2)     any **Business Invitee**; or
(3)     any **Employee**;

who sustain(s) a **Bodily Injury**.

Provided however, **Victim** shall not include any independent contractors or subcontracted personnel working on the **Premises** or any person who has or is alleged to have made any attempt at, or knowingly participated in, or encouraged any **Public Crisis Event**.

FF.     "**Wrongful Act**" means any **Public Officials Wrongful Act**, **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

### III.   EXCLUSIONS

A.   The **Insurer** shall not pay **Loss**, but shall only pay **Defense Expenses**, from any **Claim** brought about or contributed to in fact by:

(1)   any deliberate misconduct or deliberate dishonest, fraudulent, criminal or malicious act, error or omission by any **Insured**;

(2)   any willful violation by any **Insured** of any law, statute, ordinance, rule or regulation; or

(3)   any **Insured** gaining any profit, remuneration or advantage to which such **Insured** is not legally entitled.

The applicability of EXCLUSIONS A(1), A(2) and A(3) to any specific **Insured** may be determined by an admission of such **Insured**, a finding, or a final adjudication in the proceeding constituting the **Claim** or in a proceeding separate from or collateral to the **Claim**.  If any specific **Insured** in fact engaged in the conduct specified in EXCLUSIONS A(1), A(2) or A(3), such **Insured** shall reimburse the **Insurer** for any **Defense Expenses** advanced to or on behalf of such **Insured**.

B.   The **Insurer** shall not pay any **Loss** or **Defense Expenses** from any **Claim**:

(1)   under INSURING AGREEMENTS I.A(1) or I.B., if otherwise covered under INSURING AGREEMENT I.A(2);

(2)   by, on behalf of or in the name or right of:

(a)   the **Named Insured**; or

(b)   any duly elected, appointed or employed director or official of the **Named Insured**, or any member of a commission, board or other unit operated by the **Named Insured** and under its jurisdiction, and within the apportionment of the **Named Insured's** operating budget in the **Application,** unless: (i) in the form of a cross-claim or third-party complaint arising from a **Claim** made against such director, official or member, that is otherwise covered under this Policy; or (ii) for an **Employment Practices Wrongful Act**.

(3)   for actual or alleged violation of the Fair Labor Standards Act, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security, or disability benefits law, other similar provisions of any federal, state or local statutory or common law or any rules or regulations promulgated under any of the foregoing, including, but not limited to, any actual or alleged improper payroll practices, wage and hour policies, and payment of overtime or vacation pay;

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

provided however, that this EXCLUSION B(3) shall not apply to the that portion of a **Claim** for an **Employment Practices Wrongful Act** which alleges retaliatory action by the **Insured** in response to an **Employee's** exercise of rights under such statute or law.

C.    The **Insurer** shall not pay any **Loss** or **Defense Expenses** from any **Claim** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

(1)    any actual or alleged damage to, destruction of or loss of use of, any tangible property;

(2)    any actual or alleged bodily injury, corporal punishment, sickness, disease or death;

(3)    any actual or alleged emotional distress, mental anguish or humiliation; provided however, that this EXCLUSION C(3) shall not apply to any emotional distress, mental anguish or humiliation alleged in any otherwise covered **Claim** for an **Employment Practices Wrongful Act** or **Third Party Wrongful Act**;

(4)    any **Sexual Abuse or Molestation**, including without limitation any actual or alleged liability for committing **Sexual Abuse or Molestation** or permitting or failing to prevent, stop, detect or reveal **Sexual Abuse or Molestation**, whether such liability is alleged as a violation of civil rights protected under 42 USC 1981 et seq. or any similar federal, state or local law, or as a tort or other breach of duty;

(5)    any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, seepage, migration, release, growth, infestation, spread, escape, treatment, removal or disposal of, any **Pollutant**, or any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutant**, or any action taken in contemplation or anticipation of any such regulation, order, direction or request;

(6)    any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, or amendments thereto or any similar provisions of state statutory law or common law;

(7)    any actual or alleged liability of the **Named Insured** under any express contract or agreement, including an agreement to indemnify and hold harmless a third party, unless such liability would have attached to the **Named Insured** in the absence of such express contract or agreement;

provided however, that this EXCLUSION C(7) shall not be deemed to apply to a **Claim** for an **Employment Practices Wrongful Act** in the form of an actual or alleged breach of a contract to commence or to continue employment with the **Named Insured**; provided however, that only **Defense Expenses** shall be covered in connection with such **Claims**;

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

For the purposes of this EXCLUSION C(7), an "express contract or agreement" is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making, but does not include any manual of employment policies or procedures issued to the **Insureds** by the **Named Insured**;

(8)    any actual or alleged failure to obtain, implement, effect, comply with, provide notice under or maintain any form, policy, plan or program of insurance, stop loss or provider excess coverage, reinsurance, self-insurance, suretyship or bond;

(9)    any fact, circumstance, situation, transaction, event or **Wrongful Act** or series of facts, circumstances, situations, transactions, events or **Wrongful Acts**:

    (a)    underlying or alleged in any grievance, mediation, arbitration, litigation or administrative or regulatory action brought prior to and/or pending as of the Inception Date set forth in ITEM 2 of the Declarations:

        (i)    to which any **Insured** is or was a party; or

        (ii)    with respect to which any **Insured**, as of the Inception Date, knew or should reasonably have known that an **Insured** would be made a party thereto;

    (b)    which was the subject of any notice given prior to the Inception Date under any other policy of insurance or plan or program of self-insurance; or

    (c)    which was the subject of any **Claim** made prior to the Inception Date;

if, however, this Policy is a renewal of one or more policies previously issued by the **Insurer** or an affiliate thereof to the **Named Insured**, and the coverage provided by the **Insurer** or an affiliate thereof to the **Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this EXCLUSION C(9) to the Inception Date will be deemed to refer instead to the Inception Date of the first policy under which the **Insurer** or an affiliate thereof began to provide the **Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal;

(10)    any lockout, strike, picket line, hiring of replacement workers, riot or civil commotion, or other similar actions in connection with labor disputes or labor negotiations;

(11)    the activities of any **Insured** as a law enforcement officer, police officer, police department or other law enforcement unit or agency; the operation of any jail cell, holding cell, detention or lock-up facility of any kind; or

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

the activities of any **Insured** charged with the power to arrest, detain or interrogate another person, or to seize or confiscate the property of any individual or entity;

provided however; that this Exclusion shall not apply to **Claims** arising out of the administrative functions or activities of any **Insured** in the enforcement of the municipal code, laws or regulations of the **Named Insured**, including but not limited to, the issuance of citations, fines, warnings, notices of violation, the issuance or denial of licenses or permits, or the inspection of property or buildings, by persons authorized to conduct such functions or activities on behalf of the **Named Insured**;

provided further, that this Exclusion shall not apply to any **Claim** by or against a law enforcement officer or police officer in their capacity as an **Employee** under this Policy, for an **Employment Practices Wrongful Act**.

(12)    eminent domain, adverse possession, dedication by adverse use, inverse condemnation or condemnation proceedings; the use or encroachment upon property by a governmental entity, or other taking of private property by or on behalf of a governmental entity whether by statute, common-law or otherwise;

(13)    any actual or alleged violation of: (1) the Securities Act of 1933, the Securities Exchange Act of 1934, any state "blue sky" law, or any other federal, state or local securities law, or any rule or regulation promulgated under any of the foregoing; or (2) any provision of the common law imposing liability in connection with the offer, sale or purchase of securities;

(14)    the sale or offering of securities by the **Named Insured**, whether or not such securities are exempt from registration by the SEC; or the **Named Insured's** actual or proposed filing for an Initial Public Offering; or a debt offering or debt financing, including but not limited to bonds, notes, debentures and guarantees of debt;

(15)    tax credits or tax incentives or the application thereof; the formulation of tax rates; the assessment, appraisal or valuation of property; the assessment of taxes or other fees; the collection of taxes, fees or other amounts; and the disbursement of tax refunds;

(16)    war, whether or not declared, or any act or condition incidental to war, including civil war, insurrection, rebellion or revolution; or **Terrorism**;

(17)    any construction, architectural, engineering, procurement, security or other professional services, including any contract or agreement pertaining to such services; or any legal services including those services performed by any individual as a lawyer, arbitrator, mediator, title agent, notary public, administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

D.    The **Insurer** shall not pay any **Crisis Management Expenses** from any **Public Crisis Event** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving:

(1)    any war, whether or not declared, or any act or condition incidental to war, including civil war, **Terrorism**, insurrection, rebellion or revolution;

(2)    any actual or attempted suicide;

(3)    any actual or attempted kidnapping or extortion;

(4)    acts, whether intentional or not, by members of the **Victim's** immediate family members or members of the **Victim's** household; or

(5)    the activities of any person as a law enforcement officer, police officer, correctional officer, member of a police department or other law enforcement unit or agency; or the activities of any person charged with the powers to arrest, detain or interrogate another person, seize or confiscate the property of any individual or entity.

## IV.    CONDITIONS

A.    **Limits of Liability; Retentions**:

Regardless of the number of **Claims** brought under this Policy, the number of persons or entities included within the definition of **Insured**, or the number of claimants, the **Insurer's** liability is limited as follows:

(1)    Public Officials Liability

Subject to the Policy Aggregate Limit of Liability, the amount set forth in ITEM 3(A) of the Declarations shall be the maximum Limit of Liability of the **Insurer** for all **Loss** in excess of the applicable Retention set forth in ITEM 4. of the Declarations, resulting from each **Claim** under INSURING AGREEMENT I.A(1), for which this Policy provides coverage.

(2)    Claims Seeking Non-Monetary Relief

Subject to the Policy Aggregate Limit of Liability, the amounts set forth in ITEM 3(B)(1) and 3(B)(2) of the Declarations shall be the maximum Limits of Liability of the **Insurer** for all **Defense Expenses** in excess of the applicable Retention set forth in ITEM 4. of the Declarations, resulting from each **Claim**, and in the aggregate for all **Claims**, under INSURING AGREEMENT I.A(2), for which this Policy provides coverage.

(3)    Employment Practices Liability and Third Party Liability

Subject to the Policy Aggregate Limit of Liability, the amount set forth in ITEM 3(C) of the Declarations shall be the maximum Limit of

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

Liability of the **Insurer** for all **Loss** in excess of the applicable Retention set forth in ITEM 4. of the Declarations, resulting from each **Claim** under INSURING AGREEMENT I.B, for which this Policy provides coverage.

(4)     Policy Aggregate Limit of Liability

The amount set forth in ITEM 3(D) of the Declarations shall be the maximum aggregate Limit of Liability of the **Insurer** for all **Loss** resulting from all **Claims** under INSURING AGREEMENT I.A(1) and INSURING AGREEMENT I.B, and all **Defense Expenses** from all **Claims** under INSURING AGREEMENT I.A(2).

(5)     Crisis Management Coverage

In addition to the Policy Aggregate Limit of Liability, the amount set forth in ITEM 3(E) of the Declarations shall be the maximum Limit of Insurance for all **Crisis Management Expenses** in excess of the applicable Retention set forth in ITEM 4. of the Declarations, resulting from all **Public Crisis Events** under Section I.C(2), for which this Policy provides coverage.

(6)     **Defense Expenses** payable under INSURING AGREEMENTS I.A(1) and I.B are paid in addition to the applicable Limits of Liability set forth in ITEM 3. of the Declarations, and payment of **Defense Expenses** by the **Insurer** will not reduce such Limits of Liability.

(7)     **Defense Expenses** payable under INSURING AGREEMENT I.A(2) are part of and not in addition to the applicable Limits of Liability set forth in ITEM 3. of the Declarations, and payment of such **Defense Expenses** by the **Insurer** will reduce such Limits of Liability.

(8)     In the event that any **Claim** for which coverage is provided under INSURING AGREEMENT I.A(2) subsequently becomes a **Claim** for both monetary and **Non-Monetary Relief** for which coverage is provided under INSURING AGREEMENT I.A(1) or I.B, such **Claim** shall become subject to the increased Retention and the Limit of Liability applicable under INSURING AGREEMENT I.A(1) or I.B. **Defense Expenses** incurred in connection with such **Claim** shall be applied against the applicable Retention, and shall reduce the applicable Limit of Liability, under either INSURING AGREEMENT I.A(1) or I.B.

(9)     The obligation of the **Insurer** to pay **Loss** or **Defense Expenses** under all INSURING AGREEMENTS and ADDITIONAL COVERAGES will only be in excess of the applicable Retention set forth in ITEM 4. of the Declarations. The **Insurer** will have no obligation whatsoever, either to the **Insureds** or to any other person or entity, to pay all or any portion of any Retention amount on behalf of any **Insured**, although the **Insurer** will, at its sole discretion, have the right and option to advance such amount, in which event the **Insureds** agree to promptly repay the **Insurer** any amounts so advanced upon written request.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

(10)    **Related Claims** will be deemed a single **Claim**, and only one "each Claim" Limit of Liability, and only one Retention, will apply.

B.    **Defense and Settlement of Claims:**

(1)    No **Insured** may incur any **Defense Expenses** or admit liability for, or settle, or offer to settle, any **Claim** without the **Insurer's** written consent.

(2)    The **Insurer** will have the right to make investigations and conduct negotiations and enter into the settlement of any **Claim** as the **Insurer** deems appropriate, with the consent of the **Insured**. If the **Insured** refuses to consent to a settlement acceptable to the claimant in accordance with the **Insurer's** recommendation, then, subject to the applicable Limit of Liability set forth in ITEM 3. of the Declarations, the **Insurer's** liability for such **Claim** will not exceed:

(a)    the amount for which such **Claim** could have been settled by the **Insurer** plus **Defense Expenses** up to the date the **Insured** refused to settle such **Claim**; plus

(b)    sixty percent (60%) of any **Loss** and/or **Defense Expenses** in excess of the amount in clause (a) above, incurred in connection with such **Claim**.

The remaining **Loss** and/or **Defense Expenses** will be carried by the **Insured** at its own risk and will be uninsured.

(3)    It shall be the duty of the **Insured**, and not the **Insurer**, to defend any **Claims** under INSURING AGREEMENT I.A(2). The **Insured** shall have the right to select defense counsel for the investigation and defense of any such **Claim**, subject to the consent and approval of the **Insurer**, which shall not be unreasonably withheld.

(4)    The **Insurer** will have no obligation to pay **Loss** or **Defense Expenses**, or to defend or continue to defend any **Claim**, or to reimburse **Defense Expenses** or **Crisis Management Expenses** under this Policy after the applicable Limit of Liability as set forth in ITEM 3. of the Declarations, has been exhausted by the payment of **Loss**, **Defense Expenses** or **Crisis Management Expenses**. If the Policy Aggregate Limit of Liability, as set forth ITEM 3(D) of the Declarations, is exhausted by the payment of **Loss** or **Defense Expenses**, the entire premium will be deemed fully earned and the **Insurer** shall no longer be obligated to make any further payments under this Policy.

C.    **Other Insurance:**

(1)    All **Loss** payable under this Policy will be specifically excess of and will not contribute with other valid and collectible insurance, including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess of this Policy. This Policy will not be subject to the terms of any other

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

insurance. Other insurance includes, but is not limited to, coverage or benefits provided by self-insurance arrangements, pools, self-insurance trusts, captive insurance companies, retention groups, reciprocal exchanges or any other plan or agreement of risk transfer or assumption.

(2)    Notwithstanding CONDITION C(1) above, with respect to any **Claim** under this Policy for which coverage is available under any insurance policy which applies to claims for bodily injury, personal injury or property damage, the **Insurer** will have no duty to defend such **Claim**, or to pay **Defense Expenses** incurred by or on behalf of any **Insured** in connection with such **Claim** or to contribute to any defense provided to any **Insured** under such other insurance policy, or to reimburse any other insurer, in whole or in part, for **Defense Expenses** incurred in connection with such **Claim**.

D.    **Cooperation; Subrogation:**

In the event of a **Claim**, the **Insured** will provide the **Insurer** with all information, assistance and cooperation that the **Insurer** reasonably requests, and will do nothing that may prejudice the **Insurer's** position or potential or actual rights of recovery. At the **Insurer's** request, the **Insured** will assist in any actions, suits, or proceedings, including but not limited to attending hearings, trials and depositions, securing and giving evidence, and obtaining the attendance of witnesses, and will also assist in making settlements. In the event of payment, the **Insurer** will be subrogated to the extent of any payment to all of the rights of recovery of the **Insured**. The **Insured** will execute all papers and do everything necessary to secure such rights, including the execution of any documents necessary to enable the **Insurer** effectively to bring suit in their name. The obligations of the **Insured** under this CONDITION D. will survive the expiration or cancellation of the Policy.

E.    **Extended Reporting Period:**

(1)    If either the **Insurer** or the **Named Insured** cancels, refuses or declines to renew this Policy for any reason other than nonpayment of premium, the **Named Insured** will have the right to:

(a)    a seventy-five (75) day Automatic Extended Reporting Period, beginning on the effective date of cancellation or non-renewal, for no additional premium charge; and

(b)    to purchase an Additional Extended Reporting Period, beginning on the effective date of cancellation or non-renewal, for an additional premium; provided that the **Insured** elects to purchase the Additional Extended Reporting Period in writing and provides to the **Insurer** any addition premium due within thirty (30) days of the effective date of cancellation or non-renewal, subject to the available options as set forth below in paragraph (3) of this Section.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

(2)    The coverage otherwise afforded by this Policy will be extended to apply to **Loss** or **Defense Expenses** from **Claims** first made during an Extended Reporting Period, but only if such **Claims** are for **Wrongful Acts** committed before the end of the **Policy Period** or the date of any cancellation of coverage under CONDITION H, whichever is earlier. An Extended Reporting Period does not increase or reinstate any Limit of Liability and may only be effective if all premiums and retentions due under the Policy have been paid. The Automatic Extended Reporting Period shall not become effective if the **Insured** procures replacement coverage. Once purchased, the Additional Extended Reporting Period may not be canceled and the premium shall be deemed fully earned.

(3)    Additional Extended Reporting Period Options:

    (a)    a one (1) year extended reporting period for an additional premium of seventy percent (70%) of the Premium set forth in ITEM 6. of the Declarations;

    (b)    a two (2) year extended reporting period for an additional premium of one hundred percent (100%) of the Premium set forth in ITEM 6. of the Declarations; or

    (c)    a three (3) year extended reporting period for an additional premium of one hundred and fifty percent (150%) of the Premium set forth in ITEM 6. of the Declarations.

F.    **Notice; Timing; and Interrelationship of Claims:**

(1)    As a condition precedent to any right to payment in respect of any **Claim** first made during the **Policy Period**, the **Insured** must give the **Insurer** written notice of such **Claim**, with full details, as soon as practicable after a public official or administrator of the **Named Insured** becomes aware of such **Claim**, and in the event that that a **Claim** is first made within thirty (30) days prior to the expiration of the **Policy Period**, no later than seventy-five (75) days after the expiration of the **Policy Period**.

(2)    If, during the **Policy Period**, the **Insured** first becomes aware of any **Wrongful Act** which may subsequently give rise to a **Claim** and, as soon as practicable thereafter but before the expiration or cancellation of this Policy:

    (a)    gives the **Insurer** written notice of such **Wrongful Act**, including a description of the **Wrongful Act** in question, the identities of the potential claimants, the consequences which have resulted or may result from such **Wrongful Act**, the damages which may result from such **Wrongful Act** and the circumstances by which the **Insured** first became aware of such **Wrongful Act**; and

    (b)    requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then the **Insurer** will treat any such subsequently resulting **Claim** as if it had been first made during the **Policy Period**.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

(3)     All notices under CONDITIONS F(1) and F(2) must be sent in writing by certified or priority mail with delivery confirmation, or electronically, to the **Insurer** at the physical or email address set forth in ITEM 5. of the Declarations.

(4)     All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with CONDITION F(2), whichever is earlier.

G.     **Notice of Crisis Management Expenses; Inspection of Property**

(1)     As a condition precedent to coverage under ADDITIONAL COVERAGE I.C(2) of this Policy, the **Named Insured** must notify the **Insurer** in writing as soon as practicable during the **Policy Period** but in no event more than ten (10) days after the **Public Crisis Event** first took place. The written notice to the **Insurer** must be as complete as possible, stating how, when, and where the **Public Crisis Event** took place and the **Bodily Injury** or damage arising therefrom, and providing a summary of the **Crisis Management Expenses** incurred or expected to be incurred.

(2)     To be eligible for coverage, **Crisis Management Expenses** must be submitted to the **Insurer** no later than ninety (90) days after such **Crisis Management Expenses** are incurred.

(3)     The **Insurer** will be permitted, but not obligated, to inspect the **Named Insured's** property and operations and to review the **Emergency Response Plan** at any time, upon reasonable notice. Neither the **Insurer's** right to make such inspection or review nor the making of any such inspection or review shall constitute an undertaking, on behalf of or for the benefit of the **Insured** or others, to determine or warrant that such property and operations are safe or that the **Emergency Response Plan** is adequate, effective or legal.

H.     **Cancellation; No Obligation to Renew:**

(1)     The **Insurer** may not cancel this Policy except for failure to pay a premium when due. The **Insurer** will deliver or mail by first class, registered or certified mail to the **Named Insured** at its last known address, written notice of cancellation at least twenty (20) days before the effective date of cancellation. Such notice shall state the reason for cancellation. A copy of such notice shall be sent to the agent of record.

(2)     The **Named Insured** may cancel this Policy by mailing to the **Insurer** written notice stating when, not later than the Expiration Date set forth in ITEM 2. of the Declarations, such cancellation will be effective. In such event, return premium will be computed as 0.90 times the pro rata unearned premium shown in ITEM 6. of the Declarations and rounded to the nearest whole dollar. Premium adjustment may be made either at the

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

time that cancellation by the **Named Insured** is effective or as soon as practicable thereafter.

(3)    The **Insurer** will not be required to renew this Policy upon its expiration. If the **Insurer** elects not to renew this Policy, the **Insurer** will deliver or mail by first class, registered or certified mail to the **Named Insured** at its last known address, written notice to that effect at least sixty (60) days before the Expiration Date set forth in ITEM 2. of the Declarations. Such notice shall state the specific reason(s) for non-renewal.  A copy of such notice shall be sent to the agent of record.

I.    **Representations**:

The **Insured** represents that the particulars and statements contained in the **Application** are true, accurate and complete, and agrees that this Policy is issued in reliance upon the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and to constitute a part of this Policy, are the basis of this Policy.

J.    **Separation of Insureds; Protection of Innocent Insureds**:

(1)    In the event of any material untruth, misrepresentation or omission in connection with any of the particulars or statements in the **Application**, this Policy will be void:

(a)    with respect to any natural person **Insured** who knew of such untruth, misrepresentation or omission; and

(b)    with respect to the **Named Insured**, if, and only if, an elected or appointed official, or the highest ranking member of any board, commission or unit, of the **Named Insured**, or any other person in a functionally equivalent position within the **Named Insured**, knew of such untruth, misrepresentation or omission.

(2)    No act, error or omission of any **Insured** will be imputed to any other **Insured** to determine the application of any Exclusion set forth in Section III. of this Policy. If it is determined that an Exclusion applies to an **Insured** in connection with a **Claim**, no coverage shall be available under this Policy for such **Insured**, however, coverage shall continue in effect under this Policy for any other **Insured**, subject to all other terms, conditions, and Exclusions herein.

K.    **No Action Against Insurer**:

(1)    No action may be taken against the **Insurer** unless, as conditions precedent thereto, there has been full compliance with all of the terms of this Policy and the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after adjudicatory proceedings, or by written agreement of the **Insured**, the claimant and the **Insurer**.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

    (2)       No person or entity will have any right under this Policy to join the **Insurer** as a party to any **Claim** to determine the liability of any **Insured**; nor may the **Insurer** be impleaded by an **Insured** or his, her or its legal representative in any such **Claim**.

L.      **Insolvency of Insured**:

The **Insurer** will not be relieved of any of its obligations under this Policy by the bankruptcy or insolvency of any **Insured**.

M.      **Non-Pyramiding of Limits**:

If a **Claim** is made for which coverage is afforded, under this Policy and any other policy or policies issued by the **Insurer** or any affiliate thereof, to the **Named Insured**, or to any public entity or political subdivision:

    (1)       which shares an operational budget with the **Named Insured**; or

    (2)       which receives its funding or budget from the same tax base as the **Named Insured**; or

    (3)       operates or has jurisdiction over the **Named Insured** or which is operated by or under the jurisdiction of the **Named Insured**;

then the maximum amount payable in the aggregate under this Policy, and all such other policies, shall not exceed the single highest Limit of Liability available under all such policies.  Only one retention or deductible shall apply, which shall be retention or deductible corresponding to the Limit of Liability applied to the **Claim**.

N.      **Territory**:

This Policy applies to **Wrongful Acts** committed by any **Insured**, or to any **Claim** brought against any **Insured** anywhere in the world.

O.      **Authorization and Notices**:

The **Insureds** agree that the **Named Insured** will act on their behalf with respect to receiving any notices and return premiums from the **Insurer**.

P.      **Changes**:

Notice to or knowledge possessed by any agent or other person acting on behalf of the **Insurer** will not affect a waiver or change in any part of this Policy or estop the **Insurer** from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement.

Q.      **Assignment**:

No assignment of interest under this Policy will bind the **Insurer** without its consent.

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

R.     **Entire Agreement**:

The **Insured** agrees that this Policy, including the **Application** and any endorsements, constitutes the entire agreement between them and the **Insurer** or any of its agents relating to this insurance.

S.     **Headings**:

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**In witness whereof, the Insurer has caused this Policy to be executed on the Declarations Page.**

ENDORSEMENT NO.

MISSOURI AMENDATORY ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on 07/01/2013 , forms part of

>
> Policy No. 0202-2978
> Issued to    City of Richmond Heights
> Issued by    Darwin National Assurance Company

This endorsement modifies insurance coverage provided under policies issued in the State of Missouri.

In consideration of the premium charged, it is hereby agreed that:

A.     Section II. DEFINITIONS, Subsection N., the definition of "**Loss**" is amended to read as follows:

"N.     "**Loss**" means damages, pre-judgment interest, post-judgment interest, front pay and back pay, judgments, settlements, punitive or exemplary damages, or other amounts that an **Insured** is legally obligated to pay as a result of a **Claim**.

**Loss** will not include:

(1)     **Defense Expenses**;
(2)     **Non-Monetary Relief**;
(3)     any amount representing the value of diminished or lost retirement, health care or other benefits;
(4)     fines, taxes, penalties;
(5)     the cost of disaster response activities conducted by the **Insured** as required by the Federal Emergency Management Agency (FEMA);
(6)     amounts due under any contract to commence, continue or separate from employment with the **Named Insured**, including but not limited to the value of any compensation or employment benefits lost, or the cost of specific performance in connection with any such contract; or
(7)     the multiplied portion of a multiple damages award; provided that **Loss** will include any multiplied damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act ("Specified Multiplied Damages") that an **Insured** is obligated to pay as a result of a **Claim**."

B.     Section IV. CONDITIONS, Subsection H. Cancellation; No Obligation to Renew, paragraph  (1) is deleted in its entirety and replaced by the following:

"(1)     The **Insurer** may not cancel this Policy except for failure to pay a premium when due. The **Insurer** will deliver or mail by first class, registered or certified mail to the **Named Insured** at its last known address, written notice of cancellation at least twenty (20) days before the effective date of cancellation. Such notice shall state the reason for and the effective date of such cancellation. A copy of such notice shall be sent to the agent of record. In the event of such cancellation, the Policy will be deemed terminated as of the date indicated in the **Insurer's** written notice of cancellation to the **Named Insured**."

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

C.   Section IV. CONDITIONS, Subsection F. Notice; Timing; and Interrelationship of Claims, paragraph (1), is amended to add the following additional sentence:

"No **Claim** will be denied based upon the **Insured's** failure to provide notice within such specified time, unless this failure operates to prejudice the rights of the **Insurer**, in accordance with the laws and regulations of the State of Missouri.  If such notice is mailed, the date of mailing shall constitute the date that such notice was given to the **Insurer** and proof of mailing shall be sufficient proof of notice."

D.   Section IV. CONDITIONS, Subsection K. No Action Against Insurer, paragraph (1), is amended to add the following additional sentence:

"Any suit or action against the **Insurer** for the payment of money must be commenced within ten years from the date of such determination."

E.   The following additional Section is hereby added to the Policy:

**"MISSOURI PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION COVERAGE LIMITATIONS:**

1.   Subject to the provisions of the Missouri Property and Casualty Insurance Guaranty Association Act (to be referred to as the Act), if the **Insurer** is a member of the Missouri Property and Casualty Insurance Guaranty Association (to be referred to as the Association), the Association will pay claims covered under the Act if the **Insurer** becomes insolvent.

2.   The Act contains various exclusions, conditions and limitations that govern a claimant's eligibility to collect payment from the Association and affect the amount of any payment. The following limitations apply subject to all other provisions of the Act:

(a)   Claims covered by the Association do not include a claim by or against an insured of an insolvent insurer, if the insured has a net worth of more than twenty-five-million dollars ($25,000,000) on the later of the end of the insured's most recent fiscal year or the December thirty-first (31st) of the year next preceding the date the insurer becomes insolvent; provided that an insured's net worth on such date shall be deemed to include the aggregate net worth of the insured and all of its affiliates as calculated on a consolidated basis.

(b)   Payments made by the Association for covered claims will include only that amount of each claim which is less than three-hundred-thousand dollars ($300,000).

However, the Association will not:
(1)   Pay an amount in excess of the applicable limit of liability of the policy from which a claim arises; or
(2)   Return to an insured any unearned premium in excess of twenty-five-thousand dollars ($25,000).

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

These limitations have no effect on the coverage the **Insurer** will provide under this policy."

This amendatory endorsement shall supercede and take precedence over any provisions of this Policy or any endorsement to this Policy, whenever added, that are inconsistent with or contrary to the provisions of this amendatory endorsement.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

e1159 (6/2012)                    Page 3 of 3

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

## ENDORSEMENT NO.

### MINIMUM EARNED PREMIUM UPON CANCELLATION

This Endorsement, effective at 12:01 a.m. on  07/01/2013 , forms part of

      Policy No.  0202-2978
      Issued to    City of Richmond Heights
      Issued by   Darwin National Assurance Company

In consideration of the premium charged, it is hereby agreed that Section IV. CONDITIONS, Subsection H. governing Cancellation; No Obligation to Renew, Paragraph (2) thereof is deleted in its entirety and replaced as follows:

    "(2)    The **Named Insured** may cancel this Policy by mailing the **Insurer** written notice stating when, no later that the Expiration Date set forth in ITEM 2(b) of the Declarations, such cancellation will be effective.  In such event, the earned premium amount to be retained by the **Insurer** will be the greater of:
        (a) the amount computed in accordance with the customary short rate table and procedure; or
        (b) greater of 25% of the total policy premium shown in ITEM 6. of the Declarations; or
        (c) $1500.
        Premium adjustment may be made either at the time that cancellation by the **Named Insured** is effective or as soon as practicable thereafter."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_Authorized Representative_

PGU 1052 MO (6/2012)           Page 1 of 1

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

ENDORSEMENT NO.

DEFENSE COVERAGE FOR TAX-EXEMPT BOND CLAIMS

This Endorsement, effective at 12:01 a.m. on  07/01/2013 , forms part of

      Policy No. 0202-2978
      Issued to   City of Richmond Heights
      Issued by   Darwin National Assurance Company

In consideration of the premium charged, it is understood and agreed that Section III. EXCLUSIONS, Subsection C(14) is amended to read as follows:

(14)    the sale or offering of securities by the **Named Insured**, whether or not such securities are exempt from registration by the SEC; or the **Named Insured's** actual or proposed filing for an Initial Public Offering; or a debt offering or debt financing, including but not limited to bonds, notes, debentures and guarantees of debt;

        provided however, that this Exclusion shall not apply to the payment of **Defense Expenses**, for **Claims** arising from the failure of any tax exempt bond issued by the **Named Insured** to qualify for tax exempt status under applicable state or federal laws.  The most the **Insurer** shall pay for all **Defense Expenses** incurred in connection with all such **Claims** shall be $250,000, which amount shall be part of, and not in addition to, the Policy Aggregate Limit of Liability set forth in ITEM 3. of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

**ENDORSEMENT NO.**

**AMEND EXTENDED REPORTING PERIOD**

This Endorsement, effective at 12:01 a.m. on  07/01/2013 ,forms part of

      Policy No.  0202-2978
      Issued to   City of Richmond Heights
      Issued by   Darwin National Assurance Company

In consideration of the premium charged, it is understood and agreed that Section IV.E.(1) of the Policy is deleted in its entirety and replaced with the following:

    E.    **Extended Reporting Period:**

        (1)    If either the **Insurer** or the **Named Insured** cancels, refuses or declines to renew this Policy for any reason other than nonpayment of premium, the **Named Insured** will have the right to:

            a.    a ninety (90) day Automatic Extended Reporting Period, beginning on the effective date of cancellation or non-renewal, for no additional premium charge; and

            b.    to purchase an Additional Extended Reporting Period, beginning on the effective date of cancellation or non-renewal, for an additional premium which is due within thirty (30) days of the effective date of cancellation or non-renewal, subject to the available options as set forth below in paragraph (2) of this Section.

        (1-a)    The coverage otherwise afforded by this Policy will be extended to apply to **Loss** or **Defense Expenses** from **Claims** first made during an Extended Reporting Period, but only if such **Claims** are for **Wrongful Acts** committed before the end of the **Policy Period**. An Extended Reporting Period does not increase or reinstate any Limit of Liability and may only be effective if all premiums and retentions due under the Policy have been paid. The Automatic Extended Reporting Period shall not become effective if the **Insured** procures replacement coverage. Once purchased, the Additional Extended Reporting Period may not be canceled and the premium shall be deemed fully earned.

All other terms, conditions and limitations of this Policy shall remain unchanged.

                                              _____
                                              Authorized Representative

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

**ENDORSEMENT NO.**

**DEFENSE REIMBURSEMENT COVERAGE FOR CONTRACT CLAIMS
SUBJECT TO SUBLIMIT**

This Endorsement, effective at 12:01 a.m. on  07/01/2013  ,forms part of

Policy No. 0202-2978
Issued to   City of Richmond Heights
Issued by   Darwin National Assurance Company

In consideration of the premium charged, it is understood and agreed that:

Section III. EXCLUSIONS, Subsection (C)(7) is amended to read as follows:

(7)     any actual or alleged liability of the **Named Insured** under any express contract or agreement;

provided however, that this Exclusion shall not apply: (1) to the extent that the **Named Insured** would have been liable in the absence of such contract or agreement; or (2) to the payment of **Defense Expenses** for that portion of such a **Claim** against an **Insured Person**, provided that the **Insurer** shall have no duty to defend such **Claim** and such payments would be made on a reimbursement basis only and subject to a Sublimit of Liability in the amount of $25,000 in the aggregate for all such **Claims**, which amount shall be part of and not in addition to the Policy Aggregate Limit of Liability set forth in Item 3(c) of the Declarations.

For the purposes of this EXCLUSION C(7), an "express contract or agreement" is an actual agreement among the contracting parties, the terms of which are openly stated in distinct or explicit language, either orally or in writing, at the time of its making, but does not include any manual of employment policies or procedures issued to the **Insureds** by the **Named Insured**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

POL ENDT (10/2011)                    Page 1 of 1

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

ENDORSEMENT NO.

AMEND NOTICE OF CLAIM
NOTICE TO SPECIFIC INDIVIDUALS

This Endorsement, effective at 12:01 a.m. on 07/01/2013 , forms part of

Policy No. 0202-2978
Issued to    City of Richmond Heights
Issued by    Darwin National Assurance Company

In consideration of the premium charged, it is understood and agreed that Section IV. CONDITIONS, Subsection F. Notice; Timing; and Interrelationship of Claims, paragraph (1) is amended to read as follows:

(1)     As a condition precedent to any right to payment in respect of any **Claim** first made during the **Policy Period**, the **Insured** must give the **Insurer** written notice of such **Claim**, with full details, as soon as practicable after the   Risk Manager or General Counsel                                    of the **Named Insured** becomes aware of such **Claim**, and in the event that that a **Claim** is first made within thirty (30) days prior to the expiration of the **Policy Period**, no later than seventy-five (75) days after the expiration of the **Policy Period**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

PGU 1064 (1/2012)                    Page 1 of 1

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM



**Professional
Governmental
Underwriters, Inc.
The Authority.**

☐ Darwin National Assurance Company
☑ Darwin Select Insurance Company

THIS IS AN APPLICATION FOR A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY EXTENDED REPORTING PERIOD. DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION AMOUNT.

### CLAIMS-MADE PUBLIC OFFICIALS AND EMPLOYMENT PRACTICES LIABILITY
### *RENEWAL* APPLICATION

| I. GENERAL INFORMATION |
|---|

1. Legal name of entity: *City Of Richmond Heights*    Current Population: *86002*
   Street address: *1330 S. Big Bend Blvd.*
   City: *Richmond Heights*    State: *MO*    Zip: *63117*
   County: *St Louis County*

2. Within the last 12 months have any of the following taken place?
   a. Grand Jury investigations into activities of any official or employee.    ☐ Yes  ☑ No
      If "yes" provide details.
   b. Indictment of any official or employee.    ☐ Yes  ☑ No
      If "yes" provide details.

3. Provide revenues and expenditures for the most recent fiscal year.
   *Provide an explanation for any deficit or large surplus.*

| FISCAL YEAR | REVENUES | EXPENDITURES | SURPLUS (+)/ DEFICIT (-) | ACCUMULATED SURPLUS/ DEFICIT |
|---|---|---|---|---|
| *2012* | *$22.8 mill* | *$19.6 mill* | *$3.1 mill +* | *$17.9 mill +* |

| II. CLAIMS HISTORY |
|---|

1. Check here if there have been no claims made against the public entity during the last 12 months. ☐
2. Does any official or employee have knowledge of acts, errors, and/or omissions that might reasonably give rise to a claim or suit?    ☐ Yes  ☑ No
3. a. Check the boxes which describe the types of complaints/disputes the public entity has received during the last 12 months.

   ☐ Zoning  ☐ Permits Issuance  ☐ Sex Harassment  ☑ Termination  ☐ Equal Pay
   ☐ Suspension  ☐ Discrimination  ☐ Land Use  ☐ License Issuance  ☐ Variances
   ☐ Promotion  ☐ Demotion  ☐ Hiring  ☐ Segregation

   b. Have such complaints/disputes been reported to us?    ☑ Yes  ☐ No

| III. PUBLIC OFFICIALS INFORMATION |
|---|

1. Check the boxes which correspond with services provided or activities performed by the public entity.

   ☑ Police Department  ☑ License Issuance  ☐ Gas Utility
   ☐ Transit Authority  ☑ Zoning  ☐ Tax Assessment/ Collection
   ☐ Port Authority  ☐ Landfill  ☑ Building Inspection
   ☐ Water/ Sewer Utility  ☐ Airport Authority  ☐ Hospital/ Nursing Home
   ☑ Permits Issuance  ☐ Electric Utility  ☐ Housing Authority
   ☐ Daycare

   *Any new services provided or activities performed during the last 12 months which were not declared on the application of expiring policy require completion of applicable portions page 2 of Application Form PGU-POL-APP (4/2008)*

| IV. EMPLOYMENT PRACTICES INFORMATION |
|---|

1. Total number of employees: *297*  Full time: *123*   Part time: *145*   Seasonal: *30 - 103*
   *(depending upon time of year)*
2. Have any of the following taken place during the last 5 years?

DRWN POL REN 1010 (5/2008)

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

| | | | |
|---|---|---|---|
| A. Strike, slowdown or other disruption? | | ☑ No | Provide # of Incidents _____ |
| B. Layoff or reduction in staff? | ☐ Yes | ☑ No | Provide # of Incidents _____ |
| C. Employee suspensions? | ☑ Yes | ☐ No | Provide # of Incidents ___4___ |
| D. Employee dismissals? | ☑ Yes | ☐ No | Provide # of Incidents ___7___ |
| E. Employee transfers? | ☐ Yes | ☑ No | Provide # of Incidents _____ |
| F. Non-renewal of employment contracts? | ☐ Yes | ☑ No | Provide # of Incidents _____ |
| G. Employee termination? | ☑ Yes | ☐ No | Provide # of Incidents __454__ |
| H. Administrative appeals? | ☐ Yes | ☑ No | Provide # of Incidents _____ |
| I. Formal Grievances? | ☑ Yes | ☐ No | Provide # of Incidents __10___ |

*Provide explanation for any "yes" response to 2A-I.*

3.    Personnel policies and procedures been reviewed by legal counsel within the last 12 months?       ☑ Yes ☐ No

4.    Have supervisors and/or employees received employment practices training during the last 12 months?       ☑ Yes ☐ No

---

## VII. AUTHORIZED ENTITY REPRESENTATIVE This application is for Claims-Made coverage. Read the policy carefully.

1. Provide the name and title of the individual designated to receive any and all notices from the insurer concerning any policy issued as a result of this application.

    Name    *Amy Hamilton*

    Title     *City Manager*

2. Entities Attestation: The authorized signer of this application attests to the best of his/her knowledge that statements set forth herein are true; that no fact, circumstance nor situation indicating the probability of a claim or action now known to any entity, official, or employee has not been declared; and it is agreed by all concerned that omission of such information shall exclude any such claim or action from coverage under the insurance being applied for. It si further acknowledged that the signed of this application does not bind the signer to purchase the insurance. However, it is agreed this form shall be the basis of the contract and any policy which might be issued.

THE UNDERSIGNED AUTHORIZED REPRESENTATIVE, PARTNER, DIRECTOR OR OFFICER AGREES THAT IF THE INFORMATION SUPPLIED ON THIS APPLICATION CHANGES BETWEEN THE DATE THE APPLICATION IS EXECUTED AND THE TIME THE PROPOSED INSURANCE POLICY IS BOUND OR COVERAGE COMMENCES, THE NAMED INSURED WILL IMMEDIATELY NOTIFY THE INSURER IN WRITING OF SUCH CHANGES.  THE INSURER RESERVES ITS RIGHTS TO MODIFY OR WITHDRAW ITS PROPOSAL.

THE UNDERSIGNED AUTHORIZED REPRESENTATIVE, REPRESENTS AND WARRANTS ON BEHALF OF THE NAMED INSURED AND ALL PERSONS OR ENTITIES FOR WHOM INSURANCE IS BEING SOUGHT THAT TO THE BEST OF HIS OR HER KNOWLEDGE AND BELIEF AND AFTER DILIGENT INQUIRY, THE STATEMENTS SET FORTH IN THIS APPLICATION AND ANY ATTACHMENTS HERETO ARE TRUE AND ACCURATE.  IT IS UNDERSTOOD THAT THE STATEMENTS IN THIS APPLICATION, INCLUDING MATERIALS SUBMITTED TO OR OBTAINED BY THE INSURER, ARE MATERIAL TO THE ACCEPTANCE OF THE RISK, AND RELIED UPON BY THE INSURER.

NOTICE TO APPLICANTS: ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT ACT, WHICH IS A CRIME ANY MAY SUBJECT SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO ARKANSAS AND WEST VIRGINIA APPLICANTS: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN PRISON.

NOTICE TO COLORADO APPLICANTS:  IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY.  PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES.  ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY HOLDER OR CLAIMING WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

NOTICE TO DISTRICT OF COLUMBIA APPLICANTS: WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES.  IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS

Electronically Filed - St Louis County - June 30, 2017 - 02:39 PM

IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

NOTICE TO FLORIDA APPLICANTS:  ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER, FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION, IS GUILTY OF A FELONY OF THE THIRD DEGREE.

NOTICE TO KENTUCKY APPLICANTS:  ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

NOTICE TO LOUISIANA AND NEW MEXICO APPLICANTS:  ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES.

NOTICE TO MAINE, TENNESSEE, VIRGINIA, AND WASHINGTON APPLICANTS:  IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY.  PENALTIES INCLUDE IMPRISONMENT, FINES, AND DENIAL OF INSURANCE BENEFITS.

NOTICE TO NEW JERSEY APPLICANTS:  ANY PERSON WHO INCLUDES ANY FALSE OR MISLEADING INFORMATION ON AN APPLICATION FOR AN INSURANCE POLICY IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO OHIO APPLICANTS: ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT HE IS FACILITATING A FRAUD AGAINST AN INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT IS GUILTY OF INSURANCE FRAUD.

NOTICE TO OKLAHOMA APPLICANTS:  WARNING: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE, OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

NOTICE TO PENNSYLVANIA APPLICANTS:  ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, OR OTHER PERSON, FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

NOTICE TO NEW YORK APPLICANTS: ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, OR OTHER PERSON, FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

_____          4-10-13
Authorized Signatory of Entity                                          Date


Use this space to provide details for any responses which require further explanation.

FY 2012 Audit on-line at www.richmondheights.org/DocumentCenter/View/7258

_____
_____
_____
_____
_____
_____
_____
_____